# The City of Detroit v. The Michigan Paving Company.

*Charter of Detroit: Public works: Lowest bidder: Contracts: Quantum meruit.* The provisions in the charter of Detroit forbidding the execution of public works except under contract with the lowest bidder, were intended to prevent any action whatever whereby contractors could make private arrangements with the council for payment for work done or to be done in such cases.

*Public improvements: Implied contracts: Broken contract: Quantum meruit.* The city, being incapable of contracting in regard to public improvements except by express contract, conforming to the charter conditions, and let under supervision, cannot be held upon an implied contract; and work done in paving a street, or the like, without any contract, would not in any case be a charge against the city; and work partially done under a broken contract, which cannot as a written contract be enforced by suit, stands as if there were no contract, so far as any action is concerned.

*Municipal corporations: Quantum meruit: Appropriation of private property.* There is no difficulty in bringing actions for *quantum meruit* against corporations, any more than against individuals, so far as they are not guarded by charter against them. Where the city has had money or property belonging to others, it may doubtless be compelled to answer

DETROIT v. MICHIGAN PAVING CO.

*Contracts : Street paving : Work done under forfeited contract.* But the city
could not be expected or required to detach from the freehold the work
not paid for, even if it could be identified, which would be impossible
where it was an undistinguishable proportion of an entire job.

*Paving : Materials : Conversion : Assumpsit : Waiving the tort.* The mate-
rial not incorporated in the pavement, and which the city has appropri-
ated, it is liable for as for a wrong, and this liability may be enforced
in assumpsit, waiving the tort.

*Paving : Special assessment : Charter : Public letting : Lowest bidder : Prop-
erty appropriated : Contract : Presentation of claim to council for audit.*
COOLEY, CH. J., *dissenting,* held (1) that the objection that under the
contract and under the city charter the city could not be made liable
in an action at law, the only remedy of the contractor being through
the special assessment, was not well taken; (2) that the first contract
having been properly let under the charter, and every thing done by
plaintiff having been done under it, and this work and the materials for
which this suit is brought having been taken into account in letting the
second contract, which was let in due form on that basis, the present
claim is not for work done or materials furnished outside the contract,
and to permit a recovery for such work and materials as the city has
appropriated and had the benefit of, would not infringe the charter pro-
visions for a public letting to the lowest bidder; and (3) that the objec-
tion that the claim had not been presented to the council before suit
was brought, not having been made by the pleadings, could not be con-
sidered.

*Heard January 11.     Decided April 24.*

Error to Superior Court of Detroit.

*D. C. Holbrook,* for plaintiff in error, argued that the city was
not liable on an implied assumpsit created in this manner;
that the contract providing expressly that the city should not
be liable for any portion of the special assessments until the
same should have been paid into the city treasury and that
the contractor should depend entirely upon the special assess-
ments, and the charter providing that no such public work
should be paid for or contracted to be paid for except out of
the proceeds of the tax or assessment levied to pay for the
work, and there being no evidence that any such tax or assess-
ment was levied or collected, the city cannot be held liable
on the common counts in assumpsit: *Goodrich v. Detroit, 12
Mich., 279;* that the difficulty in the plaintiff's case is, that
according to the charter the city cannot become directly lia-
ble to pay the money without having taken certain statutory
proceedings, and the collection of the money or funds, or the
*neglect* of the city to take such proceedings; and the declara-
tion consisting of the common counts only, cannot apply to
either of such cases; that whatever may be the law as to
apportionment of contracts between individuals, there can be no
such thing here as to the city, a municipal corporation, acting
as an agent between property owners and contractors; that

DETROIT *v.* MICHIGAN PAVING CO.

the charter requires an assessment for the *whole* work before it is commenced, and the contract is, to pay plaintiff for the *whole work when completed*, and not before, and the difficulty here is, that there is no authority to collect or pay any apportionment of the work, and if there is no authority to *collect* it, there can be no *liability* to pay; that the city is a mere agent between the contractor and the public, and can only be liable in an action on the case for neglect to assess the value of the work done; that the property owners are entitled to a faithful performance of the contract: *Dillon on Corp.*, § *648*. The city contends that it could not and did not accept this work and materials, and the fact that it was used, makes no difference. The law of the case and the charter prohibit the city from purchasing these materials without going through the form of advertising and receiving bids, and a contractor cannot force it on the city in this way, as the city could not impliedly accept or purchase in this way, when it could not by its own act. A proceeding of this kind prevents the city paying three-fourths of this amount in street paving bonds. The claim was not presented to the council for audit and allowance as required by the charter. All claims being required to be so presented, this is a fact to be shown by plaintiff, and this defense is open under the general issue.

*Baker & Thompson*, for defendant in error:

There is nothing in the provision of the contract as to forfeiture which would forfeit, as stipulated damages or otherwise, the work, labor and materials that was done or furnished in part performance of the agreement. While it may make time the essence of the contract, it is clear that it does not prevent the paving company from recovering on a *quantum meruit*. It merely compelled the company to stop work on receiving the notice, which would place the company in much the same position it would have been in had it voluntarily abandoned the job.

The city is liable upon a *quantum meruit*. (1) The work performed by the paving company was reasonably worth, not exceeding the contract prices, the sum of one thousand six hundred and thirty-eight dollars and sixty-five cents, and was of that value to the city; (2) The city sustained no damages which would reduce that sum by reason of the company's failure to fully perform the contract; (3) In completing the work the city used the grading, sand and curbstones, furnished by the company.

The city's liability on a *quantum meruit* is the same as that of a private person under like circumstances: *Gas Co. v. San Francisco, 9 Cal., 453; Detroit v. Redfield, 19 Mich., 376; People v. Flagg, 17 N. Y., 586; Gas Co. v. Yew York, 33 N. Y., 309; Peterson v. Mayor of New York, 17 N. Y., 449; DeGrave v. Monmouth, 19 Eng. C. L., 300; 1 Dillon on Mun. Corp.,* §§ *383–8.*

The original contract with the plaintiff was within the corporate powers, and it was no violation of the charter for the city, in making the contract to complete the work, to use, accept and appropriate the work done and the materials furnished by the plaintiff: *People v. Swift, 31 Cal., 26; Keyser v. School district, 35 N. H., 477; Hoyt v. Thompson, 19 N. Y., 207; Abbott v. Hermon, 7 Greenl., 96; Hayden v. Madison, 7 Id., 76.*

It is only where the original contract is absolutely void, and incapable of ratification, that the contractor cannot recover for work actually done and accepted: *Brady v. Mayor of New York, 20 N. Y., 312; S. C., 2 Bosw., 173.*

Under the city charter the cost and expense of street pavements, except crosswalks and of the work at the intersection of cross streets, is assessed upon the abutting property: *2 S. L. 1873, p. 1283.*

And in the contract in question the city agrees to levy and collect a special assessment upon the property fronting on St. Antoine street, and to pay over the avails thereof to the paving company. A provision was also inserted requiring the company to rely upon such special assessments for payment. But these provisions do not prevent a recovery in this action: (1) The city can collect the amount of the judgment by a further assessment: *City Charter, p. 77, § 106; 2 S. L. 1867, p. 1111; Whitely v. Lansing, 27 Mich., 131;* (2) This action is necessary to ascertain the amount due and to give the city the benefit of a jury trial: *Mich. Paving Co. v. Common Council of Detroit, 34 Mich.;* (3) There is nothing in the city charter which prevents the payment of the plaintiff or prohibits the common council from making the necessary assessment to collect the requisite amount from the abutters: *City Charter, p. 122,* §§ *206–7; 3 S. L. 1869, pp. 1723–5,* §§ *38, 40, 42; Goodrich v. Detroit, 12 Mich., 279; Brevoort v. Detroit, 24 Mich., 322;* (4) No execution can issue against the city. The judgment below can only be enforced by compelling the common council to levy a further special assessment.

The provisions of section 25, chap. 4 of the city charter, do not prevent a recovery in this case: (1) It was a special matter of defense, and notice thereof should have been given: *2 C. L., § 5794;* it is analagous to a defense under the statute

of limitations; (2) It is sufficient to present the claim to the council after suit is commenced (if it is then rejected), as the only object of the provision is to save the city the costs of suit.

CAMPBELL, J:

The provisions in the charter of Detroit forbidding the execution of public works, except under contract with the lowest bidder, were intended to prevent any action whatever, whereby contractors could make private arrangements with the council for payment for work done or to be done in such cases. If the letting of a contract is only required as a preliminary form, and if, as soon as it is broken, the council and the contractors may make any arrangement they choose in regard to payment for work done, it is evident that there will be very little safety against such mischief as was meant to be guarded against. No suit can be brought until the council has been given an opportunity to settle without suit, and if there is power to settle at all, the power is plenary. The question is not whether frauds are likely or not. The legislature has seen fit to provide against arrangements not open to competition, by requiring all contracts to be let impartially, and it is for bidders to determine the risks themselves.

There is no difficulty in bringing actions for *quantum meruit* against corporations any more than against individuals, so far as they are not guarded by charter against them. Where the city has had money or property belonging to others, it may doubtless be compelled to answer; but the law has not left this corporation to enter into contracts generally, or without restrictions never imposed on private parties. Individuals are held liable outside the terms of a contract which has been broken, for work done for their benefit, because a contract is implied, and because they are capable of entering upon implied contracts as far as they choose without resorting to express and formal agreements.

But this city has no such power in regard to public im-

provements.    Its contracts must not only be express, but conformed to certain conditions and let under certain supervision.    Work done in paving a street, or the like, without any contract, would not in any case be a charge against the city under the law.    And work partially done under a broken contract, which cannot as a written contract be enforced by suit, stands as. if there were no contract, so far as any action is concerned.    Unless the contract itself provides some remedy in such a case, the case seems to be without remedy.

The city has no power to prevent such difficulties, and is not responsible for them.    If contractors tear up a street and fail to pave it properly, or to complete their work. as they have agreed, they have not put the city in the wrong for not paying them.    The corporation would be guilty of misconduct in making express contracts for bad work, or for work intended to be left unfinished.    It is impossible to tell what contracts they might have obtained if bids were received on such offers.    If liable at all when the work is left undone, the liability arises at once, and without reference to any future contract they may be enabled to make for the completion according to the original plan.    There is no possible standard for determining the amount, unless by disregarding the chartered conditions.

The doctrine of implied assumpsit in favor of a defaulting contractor is comparatively modern; and while it is generally equitable, it is in some cases very unjust, as a person is sometimes compelled to put up with such work as he would not have been willing to accept on any terms, because it has some pecuniary value, and cannot well be undone or removed from his land.    It is a very easy matter for any contractor to make such terms as will entitle him to installments of compensation as his work progresses, and to make special terms for all accidents and innocent failures.    It is a very difficult thing for a public corporation to watch over its contractors and their doings, as a private party would; and for this reason it needs special

safeguards. The charter is intended to provide these, and it has done so.

The city could not be expected or required to detach from the freehold the work not paid for, even if it could be identified, which would be impossible, inasmuch as it was an undistinguishable proportion of an entire job. The material not incorporated in the pavement, stands on a different footing. It did not belong to the city, and its proceeds, therefore, were not properly receivable or retainable. For these there is a liability arising out of a wrong, and not out of contract; and the form of the remedy in assumpsit, waiving the tort, does not prevent the maintenance of the action based on the facts.

The judgment should be reversed, with costs, and a new trial awarded.

MARSTON and GRAVES, JJ., concurred.

COOLEY, CH. J:

This action is brought to recover the value of labor done and materials made use of in the grading and paving of a portion of St. Antoine street in the city of Detroit. The work was begun by the defendant in error under a contract with the city, bearing date June 23, 1874, by the terms of which the work was to be completed on or before the 15th day of September, 1874. The clause in the contract regarding compensation is as follows: "And it is further mutually agreed that the common council will cause a special assessment to be levied upon all lands or lots fronting or abutting upon said St. Antoine street, lying between Adams avenue and Division street, in consideration of the materials to be furnished and the labor to be performed by said parties of the second part; and it is further agreed by the said party of the first part that party of the first part will pay over to said parties of the second part the avails of all special assessments levied and collected on lands liable by law, which shall be paid

into the treasury of said city for or on account of such special assessments: *Provided,* That the party of the first part shall have the option to pay to said parties of the second part any portion, not to exceed three-quarters of the contract price of said work and materials, in street paving bonds, in accordance with the charter and ordinances, in lieu of such assessments or moneys to be collected therefrom. But the said city of Detroit, party of the first part, shall not be liable for any part or portion of said special assessments until the same shall have been actually paid into the treasury of the said city."

The bill of exceptions recites that evidence was introduced "showing that the plaintiff proceeded to perform said contract and finished a portion thereof, which was accepted and paid for; that the plaintiff also did certain grading, set curbstones and furnished a quantity of sand, all of which was of the value to the defendant of sixteen hundred thirty-eight and sixty-five one-hundredths dollars, said amount not exceeding the contract prices; that it was impossible for the plaintiff to fully perform said contract by the fifteenth of September, 1874, the time limited therefor, and the same was not performed on that day; that thereupon the board of public works of said defendant, with the direction of the common council, given on the evening of that day, declared said contract forfeited by the plaintiff, the party of the second part thereto.

"That afterwards the common council entered into a contract with another party to complete the work, using the grading, sand and curbstones therein, furnished by the plaintiff; that the defendant did not suffer any damages by reason of the non-performance of said contract by plaintiff, and is not entitled to any deductions for any such damages from the reasonable worth of the labor and materials furnished by the plaintiff as aforesaid.

"It appeared upon the trial of said cause that at the time of the commencement of this suit, the plaintiff had not presented to the common council of the defendant for

audit or allowance the claim aforesaid, sought to be recovered in this case, as required by section 25 of chapter 4 of the charter of the city of Detroit; that said claim was duly and regularly presented by the plaintiff to the common council on the 29th day of December, 1874, but the common council has ever since neglected and refused to audit and allow the same or to provide for its payment.

"That the above is all the evidence introduced, material to the merits of the case.

"Thereupon the court charged the jury that the plaintiff was entitled to recover said sum of sixteen hundred and thirty-eight dollars and sixty-five cents, and to render their verdict for the same; to which the defendant excepted."

I. The first objection made to this recovery is, that under the contract and under the city charter the city cannot be made liable in an action at law, and that the only remedy of the contractor, if it has any, is through the special assessment. On this point *Goodrich v. Detroit, 12 Mich., 279,* is thought to be an authority. In that case it was decided that the city could not be liable generally for the contract price of an improvement which by the charter was required to be paid only from a special assessment. It was also decided that no action at law would lie on the facts of that case. But the facts were, that the amount of the demand was liquidated, and nothing remained but to enforce payment by means of an assessment. We have repeatedly held that under such circumstances *mandamus* was the proper remedy, and not a suit at law.—*Marathon v. Oregon, 8 Mich., 372; Dayton v. Rounds, 27 Mich., 82; Peterson v. Manistee, 36 Mich., 8.* But we also held that on the facts of this case *mandamus* was not the appropriate remedy, the amount not being liquidated, and the city having a right to a trial of its liability in the usual mode.—*People v. Common Council of Detroit, 34 Mich., 201.* A suit at law is therefore the only remedy. But this suit does not determine that the city is liable generally; it only fixes the amount, and this amount must be collected in the manner provided by the contract.

II. It is also insisted that there can be no implied assumpsit where the charter requires all such work to be let on public notice to the lowest bidder. This is probably true as a rule, though there must be some exceptions. There is no complaint here that the first contract was not properly let, and it is conceded that every thing done by the defendant in error was done under it. It is also shown that in letting the contract to a second party, all that had been done by the defendant in error, and its materials on the ground, were taken into account, and a contract let in due form on the basis that the benefit of these were to be had by the contractor. There is consequently no claim here for work done or materials furnished outside the contract. The lettings have been public and in due form, and by means of the second letting the city has turned over to another party that which had been done and furnished for it under the first letting. So far as the materials were concerned, the city strictly had no right to do this against the will of the first contractor, who still owned them, notwithstanding the default; but if the contractor does not object, there is nothing in the action of the city in taking them which is opposed to either the spirit or the letter of the law requiring public lettings. The city has the benefit of the law when it lets the contract publicly, with reference to an existing state of facts and to giving to the new contractor the benefit of that which his predecessor has done and furnished. The value of the work and materials is thus taken into account and covered by the new lettings.

Had the contract not been relet, it is conceded that the city would not be liable for work done of which it did not avail itself. An unfinished work cannot be forced upon the city and payment demanded for it. But where the city immediately proceeds to complete the work, and to appropriate the benefit of all that has been done, there is no justice in resisting a claim to payment.

Natural persons are undoubtedly liable under such circumstances.—*Allen v. McKibbin, 5 Mich., 449; Lomax v. Bailey, 7 Blackf., 599; Epperly v. Bailey, 3 Ind., 72;*

*Coe v. Smith, 4 Ind., 79; Fenton v. Clark, 11 Vt., 557; Powell v. Howard, 109 Mass., 192; Britton v. Turner, 6 N. H., 481; Clark v. Manchester, 51 N. H., 594; Mc-Clay v. Hedge, 18 Iowa, 66; Mather v. Butler County, 28 Iowa, 253;* and the same reasons of natural justice apply against municipal corporations with equal force. They are not exempt from an action on a *quantum meruit* in general: *Kinne v. New Haven, 32 Conn., 210; Howard v. Oshkosh, 37 Wis., 242; Clark v. Manchester, supra;* and they ought not to be in any case, unless some positive provision of law or some principle of public policy is violated or disturbed thereby. In the present case nothing of the kind appears.

III. The objection that the claim was not presented to the council before suit was brought, was not made by the pleadings and cannot be considered. The judgment should therefore be affirmed. But the form of the judgment entry should be so modified as to show that the right of the city to make payment according to the terms of the contract is not precluded.