C. W. TURNER AND JAMES A. KIRKWOOD v. THE CITY OF GUTHRIE, *a municipal corporation.*

(Filed June 25, 1903.)

**WARRANTS OF A CITY DRAWN AGAINST A SPECIAL FUND.**
When warrants are drawn against a city, and express provision is made in said warrants that the same shall be payable from a special fund to be raised by a levy upon certain described lands, the holder of such warrants must resort to mandamus proceedings to compel such levy, and cannot compel the city to pay the same out of the general fund unless it is shown that such levy has been made, and the money to pay such warrants is in the city treasury. Mere neglect or delay on the part of the city to make such levy will not authorize a general judgment for the value of such warrants.

(Syllabus by the Court.)

*Error from the District Court of Logan County; before Jno. H. Burford, Trial Judge.*

*John D. DeBois* and *Dale & Bierer,* for plaintiffs in error.

*James Hepburn* and *Lawrence & Huston,* for defendant in error.

### STATEMENT OF FACTS.

Plaintiffs in error began this suit in the district court of Logan county, O. T., on the 29th day of June, 1901, to recover of defendant in error a judgment for the failure of the defendant to make certain levies to pay certain provisional government indebtedness evidenced by certain warrants held by plaintiffs. Said claim is based upon the act of the territorial legislature, dated December 25th, 1890, and reads as follows:

"An act for the purpose of providing for the allowance and payment of the indebtedness heretofore created by the people and cities of Guthrie, East Guthrie, West Guthrie, and Capitol Hill, now consolidated into the village of Guthrie."

This act provided among other things that the district judge of Logan county should appoint three persons to act as a commission to inquire into and pass upon all claims and demands heretofore issued by the city government mentioned in the caption of said act, and that the owners and holders of script, warrants or other evidence of indebtedness issued by said city governments should present their claims to the commissioners, and if said commissioners should find said claims were of the character mentioned in said act, the same should be allowed and thereafter certified to the district judge for approval or disapproval, and that all claims allowed by

the district judge should be certified to the mayor and council of the village of Guthrie, who were directed to issue warrants upon the village and payable by the village to the holders and owners thereof in installments of from one to five years and to bear interest at six per cent, per annum from the date of their allowance; and that the mayor and council should levy a tax upon the property of the residents of said village to pay the warrants so allowed, and that each of said cities should be liable for and taxable for the amount of indebtedness created by them, including the school boards of said cities.

To this petition the defendant files a demurrer on the following grounds; first, that the petition does not state facts sufficient to constitute a cause of action against this defendant; second, causes of action improperly joined; third, there is another action pending between same parties for same cause; fourth, that the court has no jurisdiction of the subject matter of the action; fifth, statute of limitations.

Which demurrer was by the court sustained, to which the plaintiff excepted, now excepts, and brings the cause here for review.

Opinion of the court by

IRWIN, J.: The contention of attorneys for plaintiffs in error is that as all of their warrants were duly approved and allowed by the commissioners appointed by the district judge under the act of the legislature, and by him certified to the mayor and city council of Guthrie, who were directed to issue warrants for their payment, and as the mayor and city council after repeated demands for said levy, have neglected, failed and refused to make said levy for an unreasonable length of time, to-wit: nine years, for these reasons

the city is liable for the indebtedness evidenced by these warrants, and a judgment should be rendered against the city therefor.

To support the validity of the act of the territorial legislature, they cite the case of *Guthrie National Bank v. Guthrie,* 173 U. S. 528.

"The statute in question in this case creates a special tribunal for hearing and deciding upon claims against a municipal corporation, which have no legal obligation, but which the legislature thinks have sufficient equity to make it proper to provide for their investigation, and payment when found proper, and it does not in any way regulate the practice in courts of justice, and it is indisputably within the power of the territorial legislature to pass it, and it does not infringe upon the seventh amendment to the constitution."

Attorneys for plaintiffs in error in their brief contend that the principle is thoroughly established;

"That when a municipal corporation has imposed upon it the legal duty of levying a tax to create a special fund for the payment of certain indebtedness, and it fails and refuses for an unreasonable time to make such levies and create such special fund, the person aggrieved is not compelled to resort to mandamus proceeding to compel the levies, but may have his action against the municipality directly on his claim," and cite a number of authorities in support thereof.

One of the cases cited, *Hunt v. Utica,* 23 Barb. 398:

"If they, (the council) had unreasonably neglected or refused to make the assessement or to take the necessary steps for the collection of the tax, or refused to pay over the money when collected, an action on the case might be sustained against them, and very probably by a mandamus the city could be compelled to take the appropriate measures for raising the money and discharging the indebtedness."

It will be seen by this case that the action suggested against the city was intended to apply only to the case when

the money had been actually collected, and the city refused to turn over the same in payment of the warrants, and this decision clearly indicates that the court is of the opinion that mandamus is the proper remedy to compel the levy.    We have examined all of the authorities cited, and after a careful examination of them we conclude that the full· extent to which they go is to hold that where a city or a municipality enters into a contract for certain improvements, payment to be made out of a special fund, and then after the improvements are made, the labor and money expended, and after the city has received the full benefit of the same, refuses or neglects for an unreasonable length of time to create such fund, by making the proper levies, that the municipality itself is liable for the indebtedness thus created; and as to this contention we think the clear weight of authority is to the contrary.    But before citing authorities to sustain this view, we wish to call attention to what seems to us a clear, well defined distinction between the case at bar and those discussed by the authorities cited by plaintiffs in error; those cited were without exception cases where the debt was created by the city in the first instance, and the case at bar is one where the debt is created entirely by statute, and would have no legal existence but for the statute.    The warrants here sued on were not issued in payment of any debt contracted by the City of Guthrie, but are created as legal obligations entirely by the act of the territorial legislature, and according to the interpretation put upon that act by the supreme court of the United States.    "They were claims against a municipal corporation which have no legal obligation, but which the legislature thinks have sufficient equity to make it proper to provide for their investigation and payment."

Thus it will be seen that prior to the statute these war-

rants would not have been of any legal effect against anybody, but were by the statute made an obligation against the property of residents of Guthrie proper, East Guthrie, West Guthrie and Capitol Hill, and this fact appears upon the face of each warrant, and since the statute does not impose this obligation on the City of Guthrie, and since these claims are not based upon any contract made by the City of Guthrie, no act or failure to act on the part of any particular official can render the City of Guthrie, as a city, liable; it cannot be said that the mayor and council were required by the legislature to act as the agents of the City of Guthrie, according to the provisions of the act, and because the legislature named the mayor and city council of the City of Guthrie as the instruments to carry out a portion of the provisions of the act, cannot make the City of Guthrie liable for a failure on the part of such officials to act.

In the case of *Board of Commissioners of Montgomery County v. Fullen et al.,* 12 N. E. 298, the court say:

"The construction of a free turnpike or gravel road is not, in a legal sense, a county matter; for the commissioners do not levy assessments by virtue of their position as the official representatives of the county, but by virtue of an express statute especially conferring that power upon them. They are not, at least so far as the property owners are concerned, acting as the agents of the county while exercising the power conferred by the statute, and it is legally impossible to conceive any valid reason why the county should sustain any loss because of their errors, negligence or wrong. If they are not the agents of the county, then loss ought not, in any event, to fall upon the county. * * * The position occupied by the board of commissioners is very similar to that occupied by a common council of a municipal corporation in levying assessments for street improvements, and it is settled that in such cases there is no liability on the part of the

corporation for the errors or negligence of its officers, but that the property is alone liable for the cost of the improvement."

In *Little v. The Board of County Commissioners of Hamilton County*, 7 Ind. App. 118, the court say:

"This action is against the board of commissioners as the representatives of the county to recover a judgment which, if rendered, must be paid out of the general fund of the county. In other words it is an action to recover from the county.

"The board of commissioners in the construction of free gravel roads are not acting as the agents of the county, but, by the terms of the law represent the interests of the property owners whose lands are liable to be assessed to pay for such improvements; such agency, however, being an enforced one, is subject and operative only to the extent and upon the conditions provided by the law creating it.

"If the commissioners are not the agents of the county in the construction of free gravel roads, and the law grants them no power to create a liability in making such improvements, which the county shall pay, it is impossible to conceive upon what theory the appellant can maintain this action."

In *Affeld v. City of Detroit*, 71 N. W. 151, the Michigan supreme court say:

"Where a charter provides that no public work shall be paid for or contracted to be paid for except out of a special assessment therefor to be made before the letting of the contract, work cannot be paid for by the city from any other fund than that raised for the purpose according to law."

In *German-American Savings Bank of Burlington, Iowa, v. The City of Spokane*, 49 Pac. 542, the Iowa supreme court uses this language:

"We will first note some of the propositions upon which

there is no conflict in the decisions and which we think may safely be regarded as settled here. One is that there can be no general liability contracted or established when the municipality has reached the limit of its indebtedness. Another proposition determined is that where there was no power to construct the improvements in the first instance out of the general fund, the city cannot be made liable for a failure to provide the special fund. The supreme court of the United States has held strongly to the strict construction theory as applied to municipalities and municipal officers. (citing cases.) Why should all be taxed for the failure of the council to do its duty, in a case where the contractor has a plain remedy, by mandamus, to compel the council to make the necessary collection thereof with the requisite diligence? On what principle of right and justice can the warrant holder ignore this remedy, and charge the municipality, and burden all the taxpayers? From our investigation of the cases and text books we are of the opinion that the decided weight of authority is against allowing a recovery of the city upon such matters at all, in the absence of an express lawful contract to that effect, or in case where the money has been collected on the assessments, and is in the city treasury."

By the statutes of this territory the city council are prohibited from paying any old provisional government indebtedness. Section 2, article 3, of chapter 14, Revised Statutes of 1893, passed in 1890, reads as follows:

"The council shall have no power to allow or pay any debt or obligation of any character arising from any act done or thing bought by any provisional government formerly existing where the cities now are, nor of any debt to any person made therewith under any guise whatsoever, unless authorized to do so by the majority of the legal voters of such city."

This record does not show nor is it contended that the legal voters ever authorized this payment.

In the case of *Wilson et al. v. the City of Aberdeen,* 52 Pac. 524, the supreme court of Washington say:

"Warrants issued by a city for street improvements to be paid out of a special fund, cannot be collected against the city generally, although the remedy to collect from the special fund is lost. The obligation rested upon the warrant holders to compel the officers of the city to proceed with the collection of the assessments, and if they saw fit to allow their remedy to become lost through a failure to compel an enforcement of the assessment proceedings, they, and not the general tax-payers, must bear the consequences. They were bound to take notice of what was being done in the premises, or of failure to proceed. If the property was exhausted, and proved to be inadequate, the loss cannot be imposed upon the general tax-payers."

And the same court in the case of *Northwestern Lumber Co. v. City of Aberdeen,* 60 Pac. 1115, say:

"A city is not liable for the warrants issued against a fund agreed to be raised by special assessments, for a strict improvement, though the city has neglected to collect the assessment, and the remedy of a street assessment proceeding is no longer available."

In the case of the *City of Pontiac v. Talbot Paving Company,* 94 Fed. 65, it is said:

"However, the concensus of weight of authority shall ultimately determine the remedy of the contractor for local improvements, where the statute authorizes payment by special assessment, but is merely directory in its terms to that end, or where the collection is limited by ordinance or contract to such assessments, and the authorities fail to provide for or to carry out the assessments, we are clearly of opinion that no general doctrine of municipal liability for mere non-feasance in the failure or neglect of council or officers to perform a duty of the municipality can be extended to override *per se* the inhibitions expressed in this statute, and that

the contractor must proceed by mandamus to enforce his claim. The decisions in support of this view are well considered and apparently without conflict."

In the case of *People v. Syracuse,* 144 N. Y. 63, this language is used:

"The contract provided that no payment should be made to the relator until the cost of said work shall have been ascertained and assessed, and been collected from the tax-payers liable to local taxation upon the same. No action was therefore maintainable by the contractor, against the city, but his proper remedy was to compel by mandamus, the officers of the city have the matter in charge to proceed with their debts as required by law."

In the case of *Greencastle v. Allen,* 43 Ind. 347, this rule is announced:

"Where a city organized and acting under the general law makes a contract for the improvement of a street, at the expense of the property holders, and the contractor does the work in whole or in part, and the engineer refuses to make an estimate, and the council refuses to issue precepts, upon the proper application against property holders, a suit cannot be maintained by the contractor for damages. The remedy in such case is by mandate to compel the engineer and council to perform their duty."

In the case of *Traveler's Company v. The City of Denver,* 18 Pac. 556, an action was brought on the following warrant:

"City Clerk's Office, Denver, Colorado,
7-3-1882.

"Treasurer of the City of Denver:

"Pay to the order of Joseph Williams the sum of thirteen hundred, eight and 21-100 dollars out of the 20th street sewer fund on account of the 20th street cont. by an order of the city council made 7-1-1882.

ROBERT MORRIS, Mayor.
Attest, JAMES T. SMITH, City Clerk."

In that case the Supreme Court of Colorado said:

"The city having contracted to take certain steps to create a proper fund for the payment of the cost of constructing the sewer, and a party contracting to do the work having contracted that payment therefor shall be made out of the fund so created, it is evident that the city is not liable, in an action on warrants drawn on that fund, without showing that there is money in the fund to pay the same."

In the case at bar the following is a copy of one of the warrants sued on:

"WARRANTS OF THE CITY OF GUTHRIE,
OKLAHOMA TERRITORY.

"$554.15.                                                                    No. 6.

, "Treasurer of the City of Guthrie.

"One year after date pay to the order of Harper S. Cunningham, receiver National Bank, Guthrie, the sum of five hundred and fifty four and 15-100 dollars with interest thereon at the rate of six per centum per annum, from June 3rd, 1891, from any moneys which shall arise from special levy for the payment of city warrants issued under the provisions of chapter No. 14, of the statutes of Oklahoma, providing for the payment of indebtedness of the provisional governments of the cities of Guthrie, East Guthrie, West Guthrie, and Capitol Hill, upon the subdivision of Guthrie known as East Guthrie.

By order of the City Council July 1, 1893.

A. M. McELHINNEY, Mayor.

Attest, E. G. MILLIKAN, City Clerk."

This warrant shows upon its face that it was to be paid from money arising from a special levy upon certain lands, and the City of Guthrie never contracted to pay it in any way. It seems to us that the only remedy plaintiffs ever had was by mandamus to compel the specific levies. Whether this remedy has or has not been lost, it is not necessary at this time to discuss, as it is not at present in this case.

We think the action of the district court of Logan county in sustaining the demurrer to the petition was correct. The case is affirmed, at the cost of the plaintiffs in error.

Burford, C. J., having presided in the court below, not sitting; and Pancoast, J., absent; all the other Justices concurring.